# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAMES GRASS,

    Plaintiff,

 v.                                                                                 No. 20-cv-0065 JAP/SMV

KILOLO KIJAKAZI,[1]
**Acting Commissioner of the**
**Social Security Administration,**

    Defendant.

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Plaintiff's pro se Motion to Reverse or Remand Administrative Agency Decision with Supporting Memorandum [Doc. 38], filed on May 24, 2021. The Acting Commissioner responded on July 16, 2021. [Doc. 42]. Plaintiff replied on August 10, 2021. [Doc. 45]. The presiding judge referred this matter to me for proposed findings and a recommended disposition. [Doc. 14]. Plaintiff bears the burden of showing either that the Administrative Law Judge ("ALJ") did not apply the correct legal standards or that his findings were not supported by substantial evidence. Having meticulously reviewed the entire record and being fully advised in the premises, I find that Plaintiff fails to meet that burden. At its core, I understand Plaintiff's argument to be that he was participating in Defendant's Ticket-to-Work program, which Plaintiff believes was supposed to protect him from losing his disability benefits

---

[1] Kilolo Kijakazi is the current Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for former Commissioner Andrew Saul as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (2012).

and from any overpayment. I find, however, that the Ticket-to-Work program would not have protected Plaintiff from the cessation of his benefits in this case or from the assessment of the overpayment. This is because Plaintiff was working and earning income over the threshold amounts for many months. Further, I find that the protections Plaintiff believed he had as a participant in the Ticket-to-Work program, such as nine months of being able to work without losing his benefits (a "Trial Work Period"), were extended to him irrespective of the Ticket-to-Work program. Besides, the ALJ's findings—including the finding that Plaintiff was not actually on the Ticket-to-Work program—are supported by substantial evidence, and the ALJ applied the correct legal standards. Accordingly, the Motion should be denied, and the Commissioner's final decision affirmed.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). These standards apply not only in an appeal of the denial of benefits but also in cases, like this one, that appeal the assessment of an overpayment. *Marshall v. Chater*, 75 F.3d 1421 (10th Cir. 1996).

If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

I have liberally construed Plaintiff's pro se filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). I cannot, however, "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett*, 425 F.3d at 840. Moreover, "pro se parties [must] follow the same rules of procedure that govern other litigants." *Id.* (internal quotation marks omitted).

## Procedural Background

Plaintiff was awarded disability benefits in May 2003.[3]  Tr. 70.  Plaintiff reports subsequently participating in education, job training, and employment through Defendant's Ticket-to-Work program.[4]  [Doc. 1] at 1; Tr. 29–30.  He took classes at a community college to become a paramedic.  [Doc. 1] at 1; Tr. 29–30.  He then began working as a paramedic.  [Doc. 1] at 1; Tr. 29–30.  Defendant became aware that Plaintiff was earning income as a paramedic in 2009.  *See* Tr. 149–53.  On March 30, 2009, Defendant warned Plaintiff in writing that he had exhausted seven of his nine Trial-Work-Period months and reminded him of his continuing duty to report any employment.  Tr. 149–53.  By March 17, 2012, Defendant determined that Plaintiff had been earning enough to disqualify him from disability benefits, i.e., Plaintiff had been engaged in substantial gainful activity.  Tr. 196–99.  On that basis, Defendant ceased Plaintiff's benefits retroactively to 2009.  *Id.*  Defendant then sought to recover those benefits it believed it had overpaid to Plaintiff.  Tr. 200.  After applying numerous rules governing the calculations, Defendant demanded that Plaintiff pay back all benefits he had received for the months of April 2010 through March 2012, totaling more than $45,000.  *Id.*

---

[3] Although Plaintiff claims to be blind currently, [Doc. 38] at 5, there is no indication that his disability benefits were awarded due to blindness. Instead, the record establishes that Plaintiff suffered from asthma and other respiratory problems. Tr. 207, 249, 279; *see* [Doc. 38] at 4 (Plaintiff's mentioning his use of portable oxygen); Tr. 43 (Plaintiff's testimony at the hearing in August 2017 that he has pulmonary fibrosis and not mentioning blindness). This bears mentioning because the rules for disability due to blindness are different from those applicable to all other forms of disability.

[4] The purpose of the Ticket to Work program is to "expand the universe of service providers" available to disability beneficiaries "to find, enter[,] and retain employment." 20 C.F.R. § 411.105 (2011). The Ticket itself is a document of the Commissioner's promise to pay certain qualified entities "for providing employment services, vocational rehabilitation services, and other support services to the beneficiary." § 411.120(a). When a disability beneficiary receives a Ticket, he is free to choose whether to participate in the program or not. If he wishes to put the Ticket into use, he chooses a qualified entity, and depending on which he selects, he will either sign "an individual work plan (*see* §§ 411.450 through 411.470) or . . . and sign[] an individualized plan for employment." § 411.135.

Plaintiff requested a waiver of the overpayment on October 24, 2012.  Tr. 232–39.  That request was denied.  Tr. 298–292.  Plaintiff was granted a hearing before an ALJ on August 22, 2017.  Tr. 22; *see* Tr. 10.  Plaintiff appeared and testified at the administrative hearing in Albuquerque, New Mexico.  Tr. 22–51; *see* Tr. 10.  Ultimately, the ALJ found that Plaintiff was at fault in causing the overpayment and denied Plaintiff's request that it be waived.  Tr. 15–16.

Specifically, the ALJ made findings as to how much Plaintiff earned each month during the relevant time period.  Tr. 12–15.  These findings are reflected in the chart below.  The ALJ based his findings on forms completed by Plaintiff's employers, citations to which also appear in the chart.

The ALJ applied a trial work period ("TWP") of nine months to Plaintiff's earnings.  Tr. 12.  The ALJ explained that trial-work-period months are months in which, while disabled and receiving benefits, Plaintiff performed "services."  *Id.*  For 2007, wages were "services" if they were more than $640 per month; for 2008, more than $670 per month; for 2009, more than $700 per month; for 2010 through 2012, more than $720 per month.  To constitute a trial work period, the nine months must occur in any rolling 60-month period.  Tr. 13.  Earnings from a vocational rehabilitation program constitute "services" for TWP purposes.  Impairment-related work expenses are not applied during TWP months.  *Id.* (citing POMS § DI 13010.035(F)).

Immediately following Plaintiff's nine trial-work-period months, the ALJ applied a 36-month extended period of eligibility ("EPE").  Tr. 13.  During the extended period of eligibility, the ALJ explicitly accounted for Plaintiff's impairment-related work expenses.  Tr. 13–15.  The ALJ found that during the extended period of eligibility, Plaintiff's monthly "total earnings" were offset by impairment-related work expenses to yield his monthly "countable earnings," Tr. 14, 15,

5

which are reflected in the chart below. Then, the ALJ determined whether Plaintiff's monthly "countable earnings" were high enough to constitute substantial gainful activity ("SGA").[5] Tr. 13–15. If not, he was entitled to benefits for that month. If so, he was not entitled to benefits during that month. Tr. 14.

Typically, benefits are terminated as of the first month during the extended period of eligibility that a person's earnings are high enough to be substantial gainful activity. Here, Plaintiff's countable earnings amounted to substantial gainful activitiy in February, March, April, and May of 2009. However, the ALJ found that those months constituted an unsuccessful work attempt, and Plaintiff's benefits were not ceased at that time. Tr. 14. Plaintiff's earnings again amounted to substantial gainful activity starting in January 2010, and his benefits were ceased. Although his benefits had ceased, the ALJ counted February and March of 2010 as grace months and did not assess overpayments for those months. Tr. 14.

Applying all these rules, the ALJ ultimately found that Plaintiff was overpaid for the months of April 2010 through December 2011. Tr. 14 ("[Plaintiff] was paid benefits from April of 2010 through December of 2011 and he should not have been paid them due to his work activity, resulting in the overpayment."). The ALJ found that Plaintiff's countable earnings fell below substantial gainful activity in January and February 2012, entitling him to benefits for those two months. Tr. 14 (citing Tr. 285). The ALJ then found that March 2012 was Plaintiff's termination

---

[5] SGA amounts are as follows:
    2007   $ 900/ month   2008   $ 940/ month   2009   $ 980/ month
    2010   $1,000/ month   2011   $1,000/ month   2012   $ 1,010/ month
SOCIAL SECURITY https://www.ssa.gov/oact/cola/sga.html (last visited August 17, 2021).

month because his extended period of eligibility ended and his income was high enough to constitute substantial gainful activity. Tr. 14–15.

| Month | Total Earnings | Countable Earnings | ALJ's Finding |
|---|---|---|---|
| June 2007 | $2,295 (Tr. 180) | Same during TWP | TWP month 1/9 |
| July 2007 | $2,780 (Tr. 180) | Same during TWP | TWP month 2/9 |
| August 2007 | $1,826 (Tr. 180) | Same during TWP | TWP month 3/9 |
| September 2007 | $1,226 (Tr. 180) | Same during TWP | TWP month 4/9 |
| October 2007 | $ 970 (Tr. 180) | Same during TWP | TWP month 5/9 |
| November 2007 | $1,780 (Tr. 180) | Same during TWP | TWP month 6/9 |
| December 2007 | $1,425 (Tr. 180) | Same during TWP | TWP month 7/9 |
| January 2008 | $1,590 (Tr. 180) | Same during TWP | TWP month 8/9 |
| February 2008 | $ 480 (Tr. 180) | $ 480 (Tr. 284) | Benefit |
| March 2008 | $ 0 (Tr. 180, 187) | $ 0 (Tr. 284) | Benefit |
| April 2008 | $ 0 (Tr. 180, 187) | $ 0 (Tr. 284) | Benefit |
| May 2008 | $ 0 (Tr. 180, 187) | $ 0 (Tr. 284) | Benefit |
| June 2008 | $ 0 (Tr. 180, 187) | $ 0 (Tr. 284) | Benefit |
| July 2008 | $ 0 (Tr. 180, 187) | $ 0 (Tr. 284) | Benefit |
| August 2008 | $ 0 (Tr. 180, 187) | $ 0 (Tr. 284) | Benefit |
| September 2008 | $ 143 (Tr. 180, 187) | $ 0 (Tr. 284) | Benefit |
| October 2008 | $ 0 (Tr. 180, 187) | $ 0 (Tr. 284) | Benefit |
| November 2008 | $ 0 (Tr. 180, 187) | $ 0 (Tr. 284) | Benefit |
| December 2008 | $ 565 (Tr. 187) | $ 0 (Tr. 284) | Benefit |

| January 2009 | $ 758  (Tr. 179) | Same during TWP | TWP month 9/9 |
|---|---|---|---|
| February 2009 | $1,570  (Tr. 179) | $1,468 (Tr. 284) | EPE month 1/36, unsuccessful work attempt |
| March 2009 | $ 995  (Tr. 179) | $ 893 (Tr. 284) | EPE month 2/36, no SGA, Benefit |
| April 2009 | $1,185  (Tr. 179) | $1,083 (Tr. 284) | EPE month 3/36, unsuccessful work attempt |
| May 2009 | $2,290  (Tr. 179) | $1,560 (Tr. 284) | EPE month 4/36, unsuccessful work attempt |
| June 2009 | $ 610  (Tr. 187) | $   0 (Tr. 284) | Benefit |
| July 2009 | $  0 | $   0 (Tr. 284) | Benefit |
| August 2009 | $ 288  (Tr. 179) | $ 186 (Tr. 284) | Benefit |
| September 2009 | $ 624  (Tr. 179) | $ 622 (Tr. 284) | Benefit |
| October 2009 | $  0 | $   0  (Tr. 284) | Benefit |
| November 2009 | $  0 | $   0  (Tr. 284) | Benefit |
| December 2009 | $ 475  (Tr. 187) | $   0 (Tr. 284) | Benefit |
| January 2010 | $2,160  (Tr. 186, 188) | $1,726 (Tr. 284) | EPE month 12/36, cessation month |
| February 2010 | $1,944  (Tr. 188) | $1,510 (Tr. 284) | Grace month |
| March 2010 | $2,088  (Tr. 188) | $1,654 (Tr. 284) | Grace month |
| **April 2010** | $1,488  (Tr. 186, 188) | $1,054 (Tr. 284) | **Overpayment** |
| **May 2010** | $1,536  (Tr. 186, 188) | $1,102 (Tr. 284) | **Overpayment** |
| **June 2010** | $1,248  (Tr. 186, 188) | Illegible (Tr. 284) | **Overpayment** |
| **July 2010** | $3,582  (Tr. 186, 188) | Illegible (Tr. 284) | **Overpayment** |
| **August 2010** | $1,970  (Tr. 186, 188) | $1,536 (Tr. 285) | **Overpayment** |

| September 2010 | $2,757  (Tr. 186, 188) | $2,324 (Tr. 285) | **Overpayment** |
|---|---|---|---|
| **October 2010** | $2,836  (Tr. 186, 285) | $2,403 (Tr. 285) | **Overpayment** |
| **November 2010** | $2,812  (Tr. 186, 285) | $2,378 (Tr. 285) | **Overpayment** |
| **December 2010** | $4,917 (Tr. 186, 188) | $4,484 (Tr. 285) | **Overpayment** |
| **January 2011** | $3,238 (Tr. 186, 188) | $2,804 (Tr. 285) | **Overpayment** |
| **February 2011** | $4,099 (Tr. 186, 188) | $3,666 (Tr. 285) | **Overpayment** |
| **March 2011** | $2,737 (Tr. 186, 188) | $2,304 (Tr. 285) | **Overpayment** |
| **April 2011** | $2,181 (Tr. 186, 188) | $1,748 (Tr. 285) | **Overpayment** |
| **May 2011** | $2,109 (Tr. 186, 188) | $1,675 (Tr. 285) | **Overpayment** |
| **June 2011** | $2,425 (Tr. 186, 188) | $1,992 (Tr. 285) | **Overpayment** |
| **July 2011** | $3,641 (Tr. 186, 188) | $3,207 (Tr. 285) | **Overpayment** |
| **August 2011** | $1,608 (Tr. 186, 285) | $1,175 (Tr. 285) | **Overpayment** |
| **September 2011** | $2,600 (Tr. 285) | $2,167 (Tr. 285) | **Overpayment** |
| **October 2011** | $2,624 (Tr. 285) | $2,190 (Tr. 285) | **Overpayment** |
| **November 2011** | $2,712  (Tr. 285) | $2,278  (Tr. 285) | **Overpayment** |
| **December 2011** | $2,322  (Tr. 285) | $1,888  (Tr. 285) | **Overpayment** |
| January 2012 | $ 773  (Tr. 285) | $ 340  (Tr. 285) | Last month of EPE, 36/36 Not SGA |
| February 2012 | $ 773  (Tr. 285) | $ 340  (Tr. 285) | Not SGA |
| March 2012 | $3,893  (Tr. 285) | $3,450  (Tr. 285) | Termination month |

The ALJ went on to find that Plaintiff was at fault for the overpayment. Tr. 15–16. In part, the ALJ found that Plaintiff "accepted and did not return the incorrect payments, directly causing

9

the overpayment." Tr. 16 (citing 20 C.F.R. § 404.506).  The ALJ also found that Plaintiff was not on the Ticket-to-Work program, Tr. 15, nor was his employment accommodated, Tr. 16 (citing Tr. 193–95).  The ALJ affirmed the assessment of the overpayment and denied Plaintiff's request to waive it.  Tr. 15–16.  The Appeals Council denied review on November 26, 2019.  Tr. 1–5.  Plaintiff timely filed the instant action on January 22, 2020.  [Doc. 1].

## Discussion

Plaintiff raises several challenges to the substance of the ALJ's decision as well as to matters beyond the substance of the appeal.  None warrants reversal of the ALJ's decision or any relief in this case.  Plaintiff's motions for default judgment [Docs. 43, 44] should be denied, *see* Fed. R. Civ. P. 55(a), as should his requests for materials in Braille, [Doc. 38] at 5.

<u>Plaintiff's challenges to the substance of the appeal are without merit.</u>

First, Plaintiff complains that the ALJ relied on "bogus and misleading" evidence to render his decision.  [Doc. 38] at 2.  However, Plaintiff does not specify which evidence he challenges.  Plaintiff fails to show any error in the evidence relied on by the ALJ.

Second, Plaintiff challenges the ALJ's finding that he earned income from Valencia County.  [Doc. 38] at 3.  Plaintiff denies that he "received compensation" from Valencia County Fire Department.  *Id.*  He argues that he worked for the Valencia County *Volunteer* Fire Department and, therefore, "no compensation for services [was] rendered."  *Id.*  Plaintiff fails to show any reversible error.  The ALJ relied on a document from Valencia County, which shows Plaintiff's employment income.  Tr. 187.  This constitutes substantial evidence to support the ALJ's finding that Plaintiff received employment income from Valencia County.  Plaintiff's arguments about working for a *volunteer* fire department do not overwhelm that evidence.

Next, Plaintiff argues that even if he did receive income from Valencia County, or from any other source, the ALJ failed to offset that income with his impairment-related work expenses. [Doc. 38] at 3–4. I am not persuaded that the ALJ failed to account for Plaintiff's impairment-related work expenses or otherwise erred in calculating his countable earnings. The ALJ explicitly accounted for Plaintiff's impairment-related work expenses in his calculations. Tr. 13–15.

Additionally, Plaintiff argues that his work for Valencia County, Living Cross Ambulance, and Superior Ambulance was part of his "paramedic program." [Doc. 38] at 3–4. Plaintiff's implied argument is that the income from these sources should not have affected his disability benefits. I have given considerable thought to this argument. On the one hand, Plaintiff has been adamant over many years that his paramedic program was part of his participation in Ticket to Work. There is no dispute that he was mailed a Ticket. There is no dispute that he engaged in education and training to become a paramedic. There is no dispute that he submitted receipts for impairment-related work expenses. A reasonable factfinder could have found that his income was earned in connection with the Ticket-to-Work program. Nevertheless, the Court should not reverse the ALJ's decision, for two reasons.

First, the standard of review here is quite deferential to the ALJ's findings. To reverse the ALJ's findings, Plaintiff would have to show that they were (1) completely unsupported by the evidence, (2) supported by no more than a mere scintilla of evidence, or (3) overwhelmed by contrary evidence. *See Langley*, 373 F.3d at 1118. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084. Here, there is substantial evidence to support the ALJ's finding that Plaintiff was not on the Ticket-to-Work program during the relevant time period. *See* Tr. 15.

For example, the ALJ cited agency queries that indicated that Plaintiff was mailed a Ticket to Work in 2003 but it was never placed in use. *Id.* (citing Tr. 482–84). Further, the ALJ explained that if Plaintiff had been on the Ticket-to-Work program, he would have had a detailed work plan and would have made regular reports of his income. There is no evidence of that in the record.

Second, and more importantly perhaps, I find that Plaintiff fails to show any prejudice regarding the Ticket-to-Work issue. The implication in Plaintiff's Ticket-to-Work argument is that if he had been considered part of the program, he somehow would not have been assessed an overpayment. *See* [Doc. 38] at 3–4. However, Plaintiff offers no legal support for this assumption, and I find none. The governing regulations describe Ticket-to-Work as providing vocational training and relief from continued disability reviews. 20 C.F.R. § 411.120(a) (2011) (describing the Ticket as evidence of the Commissioner's promise to pay an employment network or State vocational rehabilitation agency for providing employment services, vocational rehabilitation services, and other support services to the disabled person); § 411.165 (2011) (no continuing disability review while a Ticket is in use). But I find no authority suggesting that the Ticket-to-Work program would have provided Plaintiff any shelter from the assessment of *this* overpayment. *See* 20 C.F.R. §§ 411.100–411.660 (2011).

For example, Plaintiff argues that he was promised nine free months of income in the Ticket-to-Work program. [Doc. 38] at 4. Regardless of whether Plaintiff was considered part of the Ticket-to-Work program or not, the ALJ applied nine months of the trial work period. The ALJ applied the nine months to June 2007 through January 2008, and to January of 2009. Tr. 12–13. The ALJ also applied the 36-month extended period of eligibility to February 2009 through January 2012. Tr. 13–15. The ALJ also credited Plaintiff with several months as unsuccessful

work attempts and a grace period.  Tr. 12–15.  Even if Plaintiff could show error in the ALJ's factual finding that he was not on an active Ticket to Work, which he cannot, Plaintiff would still fail to show any resulting prejudice.  The ALJ extended all the protections to which Plaintiff claims he was entitled.  Remand is not appropriate.

Finally, I am not persuaded by Plaintiff's claim that he was denied due process when his benefits were ceased in 2012.  *See id.* at 1.  Plaintiff argues that his benefits were "cut off without cause, administrative hearing[,] due process," or according to the rules of the Ticket-to-Work program.  *Id.*  Plaintiff does not further elaborate on his claim; this is the entirety of the argument.  On de novo review, Plaintiff fails to show that he was denied due process in the cessation of his benefits in 2012.  *See ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1216 (10th Cir. 2011) ("We review questions of constitutional law de novo."); *Parker v. Colvin*, 640 F. App'x 726, 729 (10th Cir. 2020) (applying the de novo standard to a constitutional question in a social security case).

Plaintiff fails to show that he was denied due process, i.e., the ability to appeal and be heard on the 2012 cessation of his benefits.  He requested and received reconsideration of the cessation.  Tr. 218–19, 286–88.  The reconsideration decision was issued on December 9, 2013.  Tr. 286–88.  Plaintiff had 60 days to request a hearing before an ALJ, Tr. 287, plus an additional five days for mailing, or until February 12, 2014.  There is no timely request for a hearing in the record.[6]  Nor am I persuaded that there was any prejudicial error with respect to the Ticket-to-Work program.  Plaintiff fails to argue, much less show, that participation in the Ticket-to-Work program would

---

[6] The record contains a request for a hearing dated March 4, 2015, which would have been untimely as to the cessation decision.  The record also contains a note from Plaintiff written on a bill attempting to collect the overpayment, which appears to be dated March 5, 2014, stating that he had "requested multiple times a hearing."  Tr. 293–24.

have (or should have) shielded him from cessation in this case, where he was working and earning more than the threshold amounts over many months.

<u>Plaintiff's challenges to matters beyond the substance of the appeal are without merit.</u>

Plaintiff alleges several points of error, but none is meritorious. I address these in order of analytical convenience.

Plaintiff alleges that Defendant sent him an encrypted "discovery dis[c]" but failed to provide the "key." [Doc. 38] at 3. On that basis, Plaintiff argues that Defendant is in violation of the federal discovery rules. *Id.* I am not persuaded that there is any error because the federal discovery rules do not apply to social security appeals. D.N.M.LR-Civ. 16.3(g).

Plaintiff alleges that Defendant failed to serve him with a copy of the administrative record. [Doc. 38] at 3. Plaintiff is incorrect. Defendant served the record on Plaintiff, along with a password, on or about December 16, 2020. [Doc. 46]. Moreover, Plaintiff confirmed at the administrative hearing that he had been provided with the record as it stood at the time, Tr. 27, which included every document material to this appeal, *compare* Tr. 17–21 (listing the documents included in the record at the time of the ALJ's decision), *with* Tr. 60–488 (same documents included in administrative record before this Court).

This Court is without jurisdiction, *see* § 405, to pass on Plaintiff's challenges to the circumstances ancillary to the cessation of his benefits, such as his eligibility for Medicare. *See* [Doc. 38] at 4. Similarly, Defendant's attempts to *recover* the overpayment are not before this Court. *See id.* at 2 (Plaintiff's complaint about certain billing statements), 5 (Plaintiff's complaint

about his tax refund[7]). Plaintiff's complaints about the Department of Justice and its actions (or inactions) have no relevance to this appeal.[8] [Doc. 38] at 4 (Plaintiff's reference to the lawsuit *United States v. Grass*, No. 15-cv-0302 KBM/SCY (D.N.M. 2015)); [Doc. 1] at 3 (same). Likewise, Plaintiff's complaint about his benefits being terminated again in 2020 without due process, [Doc. 38] at 2, is beyond the scope of this action, *see* § 405.

Finally, Plaintiff complains that the ALJ ignored or was not privy to "inculpatory" evidence, [Doc. 38] at 2, but he fails to identify the evidence in question. Accordingly, I find Plaintiff fails to show any new and material evidence that would warrant remand. *See* § 405(g)(sentence six).

## Conclusion

Plaintiff fails to show that remand is warranted. He fails to show that the ALJ applied any incorrect legal standard. Further, I find that the ALJ's factual findings are supported by substantial evidence. Plaintiff accepted payments that he knew or could have been expected to know were incorrect. *See* 20 C.F.R. § 404.507(c). Plaintiff fails to show that the Ticket-to-Work program would have made any difference in the assessment of the overpayment or whether it might have been waived.

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision [Doc. 38] be **DENIED** and the Commissioner's final decision, affirmed.

---

[7] Recovery of an overpayment by offsetting a tax refund is generally permissible under 42 U.S.C. § 404(A)(1)(a).
[8] In April of 2015, the Department of Justice sued Plaintiff, attempting to recover the overpayment. However, it voluntarily dismissed the action without prejudice the following month. Tr. 319; *United States v. Grass*, No. 15-cv-0302 KBM/SCY.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motions for default judgment [Docs. 43, 44] be **DENIED**, as well as his request for materials in Braille, [Doc. 38] at 5.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed. The 14-day objections deadline will not be extended.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**